ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| CASA BAVARIA INC. REP POR MICHAEL LÓPEZ LINKE, FIDEICOMISO LOPEZ LINKE REP. POR MARTINA LINKE DE LÓPEZ, MARTINA LINKE DE LOPEZ Y OTROS<br>Peticionarios<br><br>V.<br><br>FELIPE SANTIAGO NEGRON, COMPAÑÍA X, COMPAÑÍA Z Y OTROS<br>Recurridos<br><br><br><br>FELIPE SANTIAGO NEGRÓN<br><br>Recurrido<br><br>V.<br><br>CASA BAVARIA RESTAURANTE, INC., FIDEICOMISO LOPEZ LINKE, MARTINA LINKE DE LÓPEZ Y OTROS<br>Peticionarios | TA2025CE00278 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br><br>Civil Núm. AR2019CV01949 CONSOLIDADO CON AR2021CV00947<br><br>SOBRE: INJUNCTION, DAÑOS Y PERJUICIOS, RECONVENCIÓN, DESLINDE<br><br><br><br>Civil Núm. AR2021CV00947<br><br><br><br>Sobre: REINVINDICACIÓN, ACCIÓN DE NULIDAD DE NEGOCIO JURÍDICO Y OTROS |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

Ortiz Flores, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 14 de agosto de 2025.

El 11 de agosto de 2025, comparecen CASA BAVARIA RESTAURANT, INC., y otros (Casa Bavaria; los peticionarios) ante este Tribunal de Apelaciones mediante el recurso titulado *Certiorari Civil* y una *Solicitud Urgente en Auxilio de Jurisdicción.* Los peticionarios **recurren de una *Resolución* dictada y notificada el 7 de mayo de 2025**[1] por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI) que **declaró No Ha Lugar una *Solicitud de Sentencia Sumaria* presentada por Casa**

---
[1] SUMAC Entrada 140 en AR2021CV00947.

**Bavaria** y otros[2]  y también **declaró no ha lugar el escrito titulado**
***Oposición a Solicitud de Sentencia Sumaria y Solicitud  a su vez de***
***Sentencia Sumaria***[3] presentada por la parte demandante, el señor Felipe
Santiago Negrón (Sr. Santiago Negrón; recurrido).

Adelantamos que se declara no ha lugar al *Solicitud Urgente en*
*Auxilio de Jurisdicción* y se deniega la expedición del auto de *certiorari*, sin
trámite ulterior.

**I**

El 5 de octubre de 2019, Casa Bavaria presentó una *Petición de*
*Injunction*, Daños y Perjuicios contra el Sr. Santiago Negrón,
correspondiente al Caso Civil Núm. AR2019CV01949. El 22 de octubre de
2022, se presentó una contestación a la petición y una reconvención contra
los reclamos de Casa Bavaria, por el Sr. Santiago Negrón; también
presentó una demanda contra Casa Bavaria correspondiente al Caso Civil
Núm. AR2021CV00947.  El 11 de julio de 2022, se emitió por el TPI una
orden de consolidación de los casos AR2019CV01949 y AR2021CV00947.

En atención a la *Solicitud de Sentencia Sumaria* presentada por
Bavaria y la *Oposición a Solicitud de Sentencia Sumaria y Solicitud a su*
*vez de Sentencia Sumaria* por el Sr. Santiago Negrón, el TPI expuso en la
resolución recurrida lo siguiente:

> Luego de examinar con detenimiento las mociones de
> sentencia sumaria, así como los respectivos escritos en
> oposición, **estamos convencidos de que existe**
> **controversia sobre hechos materiales y pertinentes que**
> **impiden que el presente pleito sea resuelto mediante el**
> **mecanismo de la sentencia sumaria**. Cada parte en este
> caso reclama su titularidad sobre un predio de terreno, ya sea
> mediante escrituras de compraventa o mediante usucapión;
> siendo el factor de credibilidad uno esencial en este caso. Lo
> cierto es, que de los propios anejos incluidos surgen
> controversias en cuanto a la posesión de la franja de terreno
> en controversia. Asimismo, algunos de los hechos propuestos
> constituyen alegaciones y otros no se sostienen con la
> evidencia documental incluida, sea por falta de claridad o por
> inexactitud con lo que establece el documento. (Énfasis
> nuestro.)

En consecuencia, el foro de instancia resolvió que, en
cumplimiento con la Regla 36.4 de Procedimiento Civil, los

---

[2] SUMAC Entrada 121 en AR2021CV00947.
[3] SUMAC Entrada 128 en AR2021CV00947.

siguientes **hechos propuestos por Casa Bavaria,** en su *Solicitud de Sentencia Sumaria*, **no se encuentran en controversia**:

1. Santiago Molina Pérez adquirió mediante compraventa que le hiciera al Sr. José Beltrán Jiménez la finca que se describe más adelante- mediante la escritura número 35, otorgada el 22 de marzo de 1971 ante el notario Víctor Rivera Colón.

   ---RÚSTICA: Parcela de terreno marcada con el número cuatro (4) del Caso-C Novecientos veintiocho, radicada en el barrio Perchas, del término municipal de Morovis, compuesta de tres cuerdas, equivalentes a una hectárea, diecisiete áreas, noventa y una centiáreas y mil ochocientas sesenta y ocho diez milésimas de otra; lindante, por el Norte, con parcela de la Puerto Rico Reconstruction Administration y el camino Perchas que separa terrenos de Santiago Molina; por el Sur, con la parcela número tres; por el Este, con camino Perchas que separa terrenos de Santiago Molina; y por el Oeste, la parcela número dos y parcela de la Puerto Rico Reconstruction Administration. ---------

   La descrita finca, está libre de cargas y gravámenes. Consta inscrita a favor de Santiago Molina Pérez, al folio 128 del tomo 54 de Morovis, finca número 3,663. Inscripción segunda. ----------

   Véase, Exhibit I Minuta de inscripción y datos registrales obtenidos en el sistema KARIBE del Registro de la Propiedad. 3 folios.

2. La finca 3,663 de Morovis antes descrita, fue vendida por Santiago Molina Pérez a favor de Pedro Rubero Rivera y su esposa Carmen Dolores Morales González; mediante la escritura número 14 otorgada ante el notario José D. Pagán Pagán, presentada para su inscripción al asiento número 209 del diario 113 de Manatí, el día 10 de julio de 1996. Véase, Exhibit I Minuta de inscripción y datos registrales obtenidos en el sistema KARIBE del Registro de la Propiedad. 3 folios.

3. El 6 de septiembre de 1997, Pedro Rubero Rivera y su esposa Carmen Dolores Morales González, otorgaron escritura número 170 mediante la cual le vendieron la finca 3,663 de Morovis anteriormente descrita, a Francisco Quiñones Martínez y a su esposa Felicita Cruz Santiago; según resulta de la escritura antes aludida, autorizada por el Notario Andrés Jusino Archilla. Véase Exhibit II, Escritura de compraventa número 170 del 6 de septiembre de 1997, autorizada por el Notario Andrés Jusino Archilla.

4. El 30 de mayo de 2018, Francisco Quiñones Martínez y su esposa Felicita Cruz Santiago, otorgaron escritura de

segregación y compraventa número 29, de la aludida finca 3,663 de Morovis el solar que se describe a continuación:

RÚSTICA: Predio de terreno ubicado en el Barrio Perchas, del término municipal de Morovis, Puerto Rico, con una cabida superficial de DOS MIL CUATROCIENTOS CINCUENTA Y DOS PUNTO CINCO MIL OCHOCIENTOS CUARENTA Y UN METROS CUADRADOS (2,452.5841 M/C) EQUIVALENTES A CERO PUNTO SEIS MIL DOSCIENTOS CUARENTA CUERDAS (0.6240 cdas.) y en lindes: por el Norte, con propiedad del Señor Andrés Santiago; por el Sur, con propiedad de carretera estatal número Ciento Cincuenta y Cinco (155) y propiedad de Michael Lopez; por el Este, con Michael López y por el Oeste, con la propiedad de Francisco Quiñones según plano de inscripción.

Véase Exhibit III. Escritura de segregación y compraventa número 29 del 30 de mayo de 2018, autorizada por el Notario Camille Jusino Marrero.

5. La finca 5,447, la cual obra inscrita al folio del tomo ochenta y uno (81) de Morovis, fue adquirida por Santiago Molina Pérez mediante la escritura 93 sobre Inventario, División y Adjudicación del 14 de junio de 1970, ante el Notario Ángel Rivera Colón. Véase Exhibit VIII. La descripción de la finca es la siguiente:

---RÚSTICA: situada en el Barrio Río Grande de Morovis, compuesta de veinte (20) cuerdas, equivalentes a siete (7) hectáreas, ochenta (80) áreas y siete (7) centiáreas de terreno; y en lindes, por el Norte, con Gerónima, Adrián, Juan y parcela de Angela Pérez y Antonio Molina Pérez; por el Sur, con Enrique Molina Pérez; por el Este, con Sucesión Baltasar Corrada; y por el Oeste, con parcela de la Puerto Rico Reconstruction Administration. Inscrita dicha finca al folio del tomo ochenta y uno (81) de Morovis, finca número cinco mil cuatrocientos cuarenta y siete (5,447), inscripción primera (1era). -----------------------------

6. La referida finca 5,447, fue vendida por Santiago Molina Pérez y su esposa Lydia Bairon Puig a don Michael López q.d.e.p. y doña Martina Linke, mediante la escritura número 4 del 23 de enero de 1997; autorizada por el Notario José D. Pagán. Pagán. Véase Exhibit IX.

7. Una vez otorgada la escritura número 30 del 30 de mayo del 2018, sobre agrupación practicada, la cabida y configuración de la finca 5,447 quedo de la siguiente manera:

RÚSTICA: Parcela de terreno ubicada en el Barrio Perchas del término municipal de] Morovis, con una cabida superficial de VEINTE PUNTO SEIS MIL DOSCIENTOS CUARENTA CUERDAS (20.6240) equivalentes a OCHENTA Y UN MIL CERO SESENTA

PUNTO TREINTA Y SEIS MIL TRECIENTOS TREINTA Y SEIS METROS CUADRADOS (81060.36336 m/c); y en lindes, por el Norte, Andrés Santiago; por el Sur, con carretera estatal ciento cincuenta y cinco (155) y propiedad de Michael Lopez; por el Este, con propiedad de Michael Lopez y por el Oeste, con propiedad de Francisco Quiñones. ----

Inscrita dicha finca al folio del tomo ochenta y uno (81) de Morovis, finca número cinco mil cuatrocientos cuarenta y siete (5,447). Véase Exhibit VII. Escritura número 30 del 30 de mayo de 2018. ----------------------------------------------------

8. La parte peticionada demandante es dueña del siguiente bien inmueble.

RÚSTICA: Predio de terreno ubicado en el Barrio Perchas, del término municipal de Morovis, Puerto Rico, compuesto de TRES CUERDAS (3.00 cdas.), y en lindes por el NORTE, con Pedro Santiago; por el SUR, con carretera número ciento cincuenta y cinco; por el ESTE, con Severiano Cartagena; y por el OESTE, con Ramón Santos. --------------------------------------------

La propiedad descrita en el párrafo anterior consta inscrita al folio 187, del tomo 297 de Morovis, finca número 13,073, Registro de la Propiedad, Sección de Manatí. **Véase entrada 1 en SUMAC caso AR2021CV00947, alegación 8 de la demanda.**

9. La finca 13,073 logró inscripción en el Registro de la Propiedad, conforme a Resolución dictada el 14 de noviembre de 1994 en el Tribunal de Primera Instancia, Sala de Arecibo, en el caso civil numero 94-0009, sobre Expediente de Dominio, a favor de los padres del peticionado demandante, los señores Félix Santiago Fernández t/c/p Félix Santiago Fontán y Carmen Negrón Burgos. **Véase entrada 1 en SUMAC caso AR2021CV00947, alegación 11 de la demanda.**

10. El peticionado demandante adquirió la finca 13,073, el 28 de diciembre de 2005 en virtud de la escritura número 60 sobre "Liquidación, Adjudicación y Compraventa de Bienes Hereditarios" otorgada en Morovis, Puerto Rico, ante el notario Manuel Diaz Collazo. **Véase entrada 1 en SUMAC caso AR2021CV00947, alegación 9 de la demanda.**[4]

Asimismo, el foro de instancia resolvió que, en cumplimiento con la Regla 36.4 de Procedimiento Civil, los siguientes **hechos propuestos por**

---

[4] SUMAC, Entrada 140 en AR2019CV01949, págs. 8-11.

**Felipe Santiago Negrón,** en su *Oposición a la Solicitud de Sentencia Sumaria y Solicitud a su vez de Sentencia Sumaria*, **no se encuentran en controversia**:

1. El 3 de agosto de 1960, mediante la escritura número 19 ante notario en Rafael S. Curras Figueroa, don Zoilo Salgado Durán se le vende y transfiere a María Fernández un inmueble de tres cuerdas que linda por el Norte con la parcela número dos, por el Sur y Este con la parcela de Puerto Rico Reconstrucción Administración y por el Oeste con la parcela número tres. [Inscrita al folio ciento catorce, tomo treinta y ocho de Morovis, Inscripción tercera.] **(ANEJO 1).**

2. Mediante la escritura número 27 el 2 de febrero de 1973 y ante el notario Luis Rodríguez Bou, María Fernández le vende la referida finca a Andrés Santiago Fernández **(ANEJO 2A)**.

3. Félix Santiago Fernández instó procedimiento de Información de Dominio en el Tribunal Superior de Puerto Rico, Sala de Arecibo en el caso CJV 94- 0009 y dicho Tribunal después de cerciorarse de que la finca no aparecía inmatriculada en el Registro de la Propiedad, la citación de los colindantes y el cumplimiento de lo requerido en ley y la in[in]terrumpida posesión del peticionario don Félix Santiago Fernández, decretó y justificó el dominio de dicha finca a favor de dicho peticionario ordenando se inscribiese a nombre de don Félix Santiago Fernández y su esposa Carmen Negrón Burgos Resolución del Tribunal **(ANEJO 3)** y Certificación Registral **(ANEJO 4)**. La referida finca tiene la siguiente descripción:

   ---RÚSTICA: Predio de terreno ubicado en el Barrio Perchas, del término municipal de Morovis, Puerto Rico, compuesto de TRES CUERDAS (3.00 cdas.) y en lindes por el NORTE, con Pedro Santiago; por el SUR, con carretera número ciento cincuenta y cinco (155); por el ESTE, con Severiano Cartagena; y por el OESTE, con Ramón Santos.-----------------------La propiedad descrita en el párrafo anterior consta inscrita al folio 187, del tomo 297 de Morovis, finca número 13,073, Registro de la Propiedad, Sección de Manatí. ------------------------

4. El 28 de julio de 2002, fallece en Morovis Puerto Rico, Félix Santiago Fernández, t/c/c Félix Santiago Fontán y mediante resolución emitida en el caso TD2003-035 en el Tribunal de Primera Instancia, Sala de Ciales, se emite Resolución en la que se declara como único y universal herederos de don Félix Santiago Fernández a sus hijos: Felipe Santiago Negrón, Carmen Gladys Santiago Negrón, Cruz María Santiago Negrón, Wanda Noemí Santiago Negrón, Héctor Luis Santiago Negrón, María de Lourdes Santiago Negrón y a su viuda Carmen Negrón Burgos **(ANEJO 5)**. Con posterioridad mediante la

escritura número 60 otorgada ante el notario Manuel Díaz Collazo, la mitad que era propiedad de don Felipe Santiago Fernández y su esposa doña Carmen Negrón Burgos le fue vendida a don Felipe Santiago Negrón por los herederos de don Félix Santiago y la viuda doña Carmen Gladys Santiago Negrón **(ANEJO 6)**. Según escritura, el Inmueble pertenece a Felipe Santiago Negrón como su único dueño.

5. Francisco Quiñones Martínez y Felicita Cruz Santiago, otorgaron Escritura de Compraventa Núm. 170, el 6 de septiembre de 1997 ante notario Andrés Jusino Archila, comparecen como vendedores don Pedro Rubero Rivera y doña Carmen Dolores Morales González, sobre la propiedad descrita como sigue:

   ---RÚSTICA: Parcela de terreno marcada con el número cuatro (4) del Caso C-Novecientos veintiocho, radicada en el barrio Perchas, del término municipal de Morovis, compuesta de tres cuerdas, equivalentes a una hectárea, diecisiete áreas, noventa y una centiáreas y mil ochocientas sesenta y ocho diez milésimas de otra; lindante, por el Norte, con parcela de la Puerto Rico Reconstruction Administration y el camino Perchas que separa terrenos de Santiago Molina; por el Sur, con la parcela número tres; por el Este, con camino Perchas que separa terrenos de Santiago Molina; y por el Oeste, la parcela numero dos y parcela de la Puerto Rico Reconstruction Administration. ------

   Enclava una casa de madera, tipo tres-dos de diecinueve pies cinco pulgadas, con divisiones interiores de madera, construida por la Puerto Rico Reconstruction Administration. -------------------------

   Inscrita al tomo II de hoja móvil de Morovis, finca tres mil seiscientos sesenta y tres (3663). -----------

   Adquirieron los vendedores dicha propiedad según [consta] de la escritura número catorce (14) de fecha seis (6) de julio de mil novecientos noventa y seis (1996) ante el notario José D Pagán Pagán, en la ciudad de San Juan, Puerto Rico. -----------------------------------------------------------
   --------------------------

6. La deposición de don Francisco Quiñones continuó el 8 de junio de 2022 y en ella expresa que la finca que adquirió su colindancia norte era con Puerto Rico Reconstrucción Administration (página 21); establece como colindante en el sur a Felipe Santiago (página 22); por el norte con Santiago Molina y camino Perchas; y por el oeste con Enrique Molina (página 25). Con relación al plano preparado por el ingeniero Vera Rivera, no se acuerda bien si fue antes o después de la compra (página 29). En el momento de la compra no comparó el plano con la descripción en la escritura (página 31), después aclara que fue más o menos para la fecha de la compra (página

33). Confrontado con el plano que fue preparado en noviembre de 1997 alrededor de 2 meses de ser el dueño de la propiedad (página 37 de la deposición) del 8 de junio de 2022. Mientras Vera medía, él estuvo 1 o 2 veces (página 39 de la deposición). No sabe si Vera se entrevistó con alguno de los colindantes (página 40 de la deposición) y no lo vio hablando con ninguno de los colindantes (página 40 de la deposición). **(ANEJO 20).**

7. El ingeniero Juan A Vera, quien no es agrimensor licenciado, Deposición del ingeniero Vera del 7 de abril de 2021 a la página 13 **ANEJO 11** de la presente oposición. La deposición del ingeniero Vera continua el día 13 de abril del 2021. **(ANEJO 12)** de la presente oposición. El ingeniero Vera expresa como única mesura que llevó a cabo a principios del año 1999. Deposición del ingeniero Vera tomada el 13 de abril de 2021 página 22. Describe el proceso expresando que el Sr. Michel López llegó a donde él, (página 9 de dicha deposición), esto fue en marzo de 1999 o a principio de dicho año (página 10 de la deposición), la reunión fue en el restaurante Bavaria. El Sr. López le indicó el área que interesaba y que había hablado con don Francisco Quiñones (página 20 la deposición). Se reunió en el terreno con Michael López y con Francisco Quiñones quienes le mostraron los puntos. Fue contratado por el Sr. López quien se le pagó 18 años después para un terreno que le iba a comprar a Francisco Quiñones para ampliar el estacionamiento que tenía el restaurante en la carretera 155 (Deposición pág. 1)

8. En su deposición el ingeniero Vera indicó que cuando se reunió en el 1999 con don Francisco Quiñones no le había presentado ningún plano (Página 57 la deposición del 13 abril de 2021) y que además había examinado copia de la escritura que le muestra Francisco Quiñones (página 62) y se reitera que no se le pidió ningún plano a Francisco Quiñones de su finca (página 64).

9. El Sr. Andrés Santiago Fernández había fallecido desde el 2 de noviembre de 1983, se acompaña como **ANEJO 13** (certificación de defunción). 10. Ricardo Flores Ortega PE, JD, rinde su informe pericial el 21 de febrero de 2024 que le fue notificado a los demandados en el cual lleva los siguientes hallazgos preliminares **(ANEJO 19)** de la oposición, según el informe del ingeniero Ricardo Flores se refleja lo siguiente:

   a. Identificamos en el plano de construcción de DTOP/ACT, fechado 1955 al 1964 la servidumbre de la nueva carretera PR# 155, la adquisición de servidumbre adicional para el Mirador, la identificación del camino en tierra existente Perchas, su acceso modificado y pavimentado con fondos públicos.

   b. Al proyectar a escala y sobreponer los distintos planos de mensura, agregación, y condiciones existentes, concluimos que las omisiones al no establecer las servidumbres de la carretera PR #155, el Mirador, el

camino Perchas, y las curvaturas correctamente en dichos planos han contribuido a crear confusión en los linderos de las fincas.

c. Al comparar las descripciones legales de las distintas fincas en las Escrituras, #93, #170, #29, y #4 estas no coinciden con sus colindantes. Además, se utilizaron descripciones legales no actualizadas, omitiendo la carretera estatal #155.

d. Existen violaciones a la Ley Hipotecaria y del Reglamento de Registro en la agregación de fincas no colindantes. No existen los elementos de excepción de Agricultura/Industria.

e. Existen omisiones y apropiaciones de las servidumbres públicas para uso privado.

f. Existen fincas enclavadas.

g. No se respeta el derecho de uso y disfrute de la propiedad al Sr. Felipe Santiago.

h. El ingeniero Flores quien es también Juris Doctor, concluye, luego de evaluar los documentos presentados, las alegaciones, las fotos provistas, los planos de agregación escrituras, deposiciones, y mensuras realizadas, nos queda concluir lo siguiente:

1. Que el camino real Perchas existe desde antes del 1937.

2. Que la P.R.R.A. fue la agencia que lotificó y repartió parcelas en Morovis, PR.

3. Que el Departamento de Obras Públicas Estatal creó una rampa de acceso (camino estatal) con fondos y para uso Público desde la nueva carretera #155 al camino en tierra existente, conocido como el camino Perchas, hasta la estación 0+42.016. para los años 1955 al 1964.

4. Que el Honorable Tribunal emitió Resolución al Procedimiento de Expediente de Dominio, donde se evaluó y adjudico la parcela a favor de los padres del Sr. Felipe Santiago Negrón, en 1994.

5. Que los planos del Ing. Juan A. Vera y Ing. Martínez no son confiables por no cumplir con los procedimientos de rectificación y mensura.

6. Que toda transacción basada en los planos de rectificación y mensura de los ingenieros Vera y Martínez pudieran ser anulables.

7. Que se utilizaron en varias escrituras de compraventas descripciones legales, colindantes, y linderos de fincas no actualizadas al momento de las ventas.

8. Que los planos de condición existente preparados por Agr. Carlos Oquendo son confiables porque están basados en los hitos de hormigón originalmente colocados por la P.R.R.A.

9. Que el incluir áreas, (Mirador) servidumbres y propiedad Pública en los planos de mensura no cambian su titularidad ni modifican su carácter de ser propiedad del Estado.

10. Que se construyó un camino alterno ilegalmente y por terrenos privados del Sr. Felipe Santiago Negrón.[5]

Luego, el foro de instancia determinó que existen controversias que deben ser resueltas mediante un juicio plenarios, en cuanto a los siguientes hechos materiales:

1. Surge que el predio de terreno al que se hace referencia en las escrituras Núm. 19 del 3 de agosto de 1960 otorgada ante el notario Rafael S. Curras Figueroa y Núm. 27 del 2 de febrero de 1973 otorgada ante el notario Luis Rodríguez Bou, **es el mismo y existe un tracto entre ambas escrituras**; y en ambas se indica que están inscritas como sigue: Inscrita al folio ciento catorce (114), tomo treinta y ocho (38) de Morovis, Inscripción tercera. La finca descrita en la escritura Núm. 207 del 30 de noviembre de 1992, tiene una descripción diferente a la mencionada en las escrituras antes descritas e indica que carece de inscripción registral y que fue adquirida hace más de treinta años por los comparecientes de la primera parte, a saber: Eustacio Santiago Fernández y Milagros Salgado Durán; quienes vendieron en esta escritura a Félix Santiago Fernández y Carmen Aurea Negrón Burgos. El demandante alega que el Sr. Eustacio Santiago Fernández le vendió la propiedad al Sr. Félix Santiago Fernández, pero no presenta escritura alguna que demuestre cómo el Sr. Eustacio Santiago Fernández adquiere la propiedad ya que, según el tracto presentado, había culminado con la Sra. María Fernández vendiéndole la propiedad al Sr. Andrés Santiago. Evidentemente hay una falta de tracto sucesivo real.

2. Sobre la finca descrita en la escritura Núm. 207 del 30 de noviembre de 1992, el Sr. Félix Santiago Fernández, promovió un pleito sobre: Información de Dominio, caso CJV94-0009, en el cual el Tribunal determinó que el predio de terreno allí descrito fue adquirido por el Sr. Félix Santiago Fernández y Carmen Aurea Negrón Burgos, mediante compra y que han venido poseyéndolo desde la fecha de su adquisición (1992), y que tanto los peticionarios, como los anteriores dueños, la han poseído quieta, pública, pacíficamente, sin interrupción de clase alguna, en concepto de dueños, por espacio de más de 30 años. Sin embargo, existe controversia sobre si se trata de la misma propiedad a que se hace referencia en los incisos 1 y 2, aquí mencionados.

3. Si las fincas agrupadas de Francisco Quiñones y Michael López, eran fincas colindantes.

---

[5] SUMAC, Entrada 140 en AR2019CV01949, págs. 11-16.

4. A cuál finca pertenecían los 429.98 m/c de terreno en controversia y quién, si alguien, ha ejercido actos de posesión de dicho predio.[6]

Por lo antes expuesto, el TPI declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por Casa Bavaria y otros,[7] y, también declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por el Sr. Felipe Santiago Negrón, en su moción titulada Oposición a Solicitud de Sentencia Sumaria y Solicitud a su vez de Sentencia Sumaria[8] y "[e]n consecuencia, se ordena la continuación de los procedimientos, según calendarizados y de conformidad con lo aquí resuelto." [9]

El 22 de mayo de 2025, Casa Bavaria y otros presentó una *Moción en Solicitud de Reconsideración*, la cual fue declarada No Ha Lugar el 21 de julio de 2025.[10]

Inconformes los peticionarios en los recursos consolidados ante nuestra consideración, presentaron el 11 de agosto de 2025 el recurso titulado *Certiorari Civil* y una *Solicitud Urgente en Auxilio de Jurisdicción*; nos exponen en el recurso de *certiorari* los siguientes señalamientos de errores:

Primer Error: Erró el TPI al declarar NO HA LUGAR la Solicitud de Sentencia Sumaria Presentada por Los Peticionarios cuando existe un claro impedimento colateral por sentencia en la causa de acción presentada por El Peticionado en el caso AR2021CV00947, lo cual impide que se re litigue la misma causa de acción nuevamente.

Segundo Error: Erró el TPI al declarar NO HA LUGAR la Solicitud de Sentencia Sumaria Presentada por Los Peticionarios estando prescrita la causa de acción presentada por El Peticionado en el caso AR2021CV00947.

Tercer Error: Erró el TPI al determinar cómo hechos que no están en controversia determinaciones de derecho ofrecidas por el perito del peticionado, quien no está autorizado al ejercicio de la profesión de la abogacía.

Cuarto Error: Erró el TPI al tomar en consideración la Oposición a Solicitud de Sentencia Sumaria presentada por el Peticionado cuando esta no cumple con lo dispuesto en la Regla 36.3 (b) de Procedimiento Civil.

---

[6] SUMAC, Entrada 140 en AR2019CV01949, págs. 16-17.
[7] SUMAC, Entrada 121 en AR2021CV00947.
[8] SUMAC, Entrada 128 en AR2021CV00947.
[9] SUMAC, Entrada 140 en AR2019CV01949, págs. 17-18.
[10] SUMAC, Entrada 150 en AR2019CV01949.

Resolvemos sin trámite ulterior bajo lo dispuesto en la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (B) (5).[11]

## II

### A. Sentencia Sumaria

En nuestro ordenamiento jurídico el mecanismo de sentencia sumaria se rige por la Regla 36 de Procedimiento Civil de 2009, *supra*, en síntesis dispone que para poder adjudicar en los méritos una moción de sentencia sumaria se requiere que se presente "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente" ya sea sobre la totalidad de la reclamación o parte de esta.

El mecanismo procesal de la sentencia sumaria es un remedio de carácter extraordinario y discrecional. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 184 (2005). El cual tiene como finalidad "propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales". *Const. José Carro v. Mun. de Dorado*, 186 DPR 113, 128 (2012). Por ser la sentencia sumaria un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". (Énfasis en el original.) (Citas omitidas.) *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 611 (2000).

Al ser esto así, sólo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109-110 (2015), que cita a *Const. José Carro v. Mun. de*

---

[11] Esta regla nos permite "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante [nuestra] consideración, con el propósito de lograr su más justo y eficiente despacho".

*Dorado*, *supra*. De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al*, 132 DPR 115,133 (1992).

Quien promueve la sentencia sumaria "debe demostrar que no existe controversia sustancial o real en cuanto a algún hecho material, es decir, en cuanto a ningún componente de la causa de acción". *Meléndez González v. M. Cuebas*, *supra*, en la pág. 110. Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, en la pág. 609. Por otra parte, quien se opone a una sentencia sumaria debe presentar contradocumentos y contradeclaraciones que contradigan los hechos incontrovertidos por parte del promovente. *Rivera et al. v. Superior Pkg., Inc. et al.*, *supra*. Por lo cual viene obligada a contestar de forma detallada la solicitud de sentencia sumaria. Regla 36.3(b) de Procedimiento Civil, supra.

Se ha pautado que "[l]os jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria" y que "[d]eben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones que hagan las partes". *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). Sin embargo, ante un proceso de sentencia sumaria el tribunal está impedido de dirimir cuestiones de credibilidad. *Id.* Según se ha establecido jurisprudencialmente, el tribunal apelativo se encuentra en la misma posición que el tribunal de primera instancia al determinar si procede una sentencia sumaria. Sin embargo, al revisar la determinación de primera instancia, el tribunal de apelación está limitado de dos maneras: (1) s[o]lo puede considerar los documentos que se presentaron ante el foro de primera instancia; y, (2) el tribunal apelativo s[o]lo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales,

y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo, supra,* págs. 334-335.

El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro revisor. Por consiguiente, el Tribunal Supremo en *Meléndez González et al. v. M. Cuebas, supra,* estableció el estándar que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es de *novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario". *Id.* en la pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.*

Luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta que el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, supra, y debe exponer concretamente cuáles hechos materiales encontró que están controvertidos y cuáles están incontrovertidos. En lo pertinente, establece lo siguiente:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito […] y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos […]". 32 LPRA Ap. V, R. 36.4.

Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado de hechos incontrovertidos que emitió el foro primario en su Sentencia. *Id.* Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar de *novo* si el TPI aplicó correctamente el derecho a los hechos incontrovertidos. *Meléndez González et al. v. M.*

*Cuebas*, *supra*, en la pág. 119. A su vez, la Regla 36.3(e) de Procedimiento Civil, *supra*, dispone como sigue:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

La sentencia sumaria solo debe dictarse en casos claros. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, *supra*, en la pág. 611. Por tanto, cuando no existe una clara certeza sobre todos los hechos materiales en la controversia, no procede una sentencia sumaria. No obstante, se ha reiterado que "[e]l solo hecho de no presentar evidencia que controvierta la presentada por la parte promovente no implica que necesariamente procede la sentencia sumaria". *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913 (1994). Al dictar una sentencia sumaria el Tribunal deberá realizar un análisis dual el cual consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo*, *supra*, en la pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede. *Id.* en las págs. 333-334.

Se ha reiterado mediante una vasta jurisprudencia que el propósito principal de la sentencia sumaria "es propiciar la solución justa, rápida y económica de litigios que no reflejan controversias genuinas sobre hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo". *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).

Sin embargo, hay que aclarar que aligerar la tramitación de un caso no puede soslayar el principio fundamental de alcanzar una solución justa. *García Rivera et. al. v. Enríquez*, 153 DPR 323, 337-338 (2001); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).  Un Tribunal "abusa de su discreción cuando actúa de forma irrazonable, parcializada o arbitraria". *Matías Lebrón v. Depto. Educación*, 172 DPR 859, 875 (2007). Por tanto, corresponde al Tribunal conceder o denegar, en el ejercicio de su discreción, los remedios correspondientes de acuerdo con las circunstancias del litigio.

### B. Certiorari civil

El auto de *certiorari* es un vehículo procesal extraordinario que le brinda autoridad a un tribunal de mayor jerarquía para revisar las determinaciones de un tribunal inferior. *Rivera et al v. Arcos Dorados et al*, 212 DPR194 (2023) que cita a: *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012). La Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.52.1 (Regla 52.1), dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. […]

Esta regla y la jurisprudencia interpretativa, nos lleva a realizar un análisis dual para determinar si se expide o no un auto de *certiorari.*  Este examen consta de una parte objetiva y otra parte subjetiva.  Por ello, en primer lugar, tenemos que analizar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de una de las materias específicas establecidas en la Regla 52.1, toda vez que esta enumera taxativamente

bajo que materias, solamente, se podrá expedir el auto de *certiorari*. En esos casos, en los cuales la materia no está comprendida dentro de la regla, el tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente.

Superada esta etapa, corresponde analizar si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40 (Regla 40), debemos o no expedir el auto de *certiorari*. A esos fines, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Finalmente, es norma reiterada que al denegar la expedición de un auto de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. A su vez, los foros apelativos no debemos intervenir con las decisiones de los tribunales de instancia, "salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que [la] intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

Es decir, estamos obligados a evaluar "tanto la *corrección de la decisión recurrida* [,] *así como la etapa del procedimiento en que es presentada*; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del

litigio." *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008), que cita a *Negrón v. Srio. de Justicia*, 154 DPR 79, 97 (2001). Asimismo, se ha resuelto que "los tribunales apelativos no debemos intervenir con el ejercicio de la discreción de los foros de instancia, salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad." *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), que cita a *Lluch v. España Service Sta.*, *supra*.

### III

La parte peticionaria, en esencia, nos señala que el TPI se equivocó al declarar no ha lugar la Solicitud de Sentencia Sumaria presentada, con el reclamo de que existe un claro impedimento colateral en la causa de acción presentada por el Sr. Santiago Negrón en el caso AR2021CV00947, por lo que esta prescrita. Además, Casa Bavaria nos señala que el TPI erró al determinar como hechos que no están en controversia, unas determinaciones de derecho ofrecidas por el perito del peticionado, quien no está autorizado al ejercicio de la profesión de la abogacía, y señala que el TPI se equivocó al tomar en consideración la Oposición a Solicitud de Sentencia Sumaria presentada por el Peticionado cuando esta no cumple con lo dispuesto en la Regla 36.3 (b) de Procedimiento Civil.

En el presente caso se recurre de una determinación interlocutoria del foro primario, mediante la cual se denegó una solicitud de sentencia sumaria. Se trata de un dictamen que pone fin a un incidente dentro del pleito, mas no de la resolución de la cuestión litigiosa. Véase, Regla 42.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 42.1. Por consiguiente, al tratarse de un recurso de *certiorari*, en primer lugar, nos corresponde resolver si el asunto ante nuestra consideración trata sobre alguna de las materias contenidas en la Regla 52.1 de Procedimiento Civil. Se recurre de una resolución que deniega una solicitud de sentencia sumaria, una moción de carácter dispositivo por lo que tenemos jurisdicción al amparo de la precitada disposición legal.

Luego de un cuidadoso análisis del expediente, y de las determinaciones de hechos realizadas por el TPI, resolvemos que no se justifica nuestra intervención en esta etapa del procedimiento judicial. Habiendo considerado *de novo* el listado de hechos controvertidos incluidos por el TPI en su dictamen, resulta evidente que a su juicio aún existen hechos en disputa. Lo anterior impide que se disponga sumariamente de la controversia ante nuestra consideración, ya que es necesaria la celebración del juicio en su fondo.

Cónsono con lo anterior, no encontramos que el tribunal primario haya incurrido en un abuso de discreción o que haya actuado bajo prejuicio o parcialidad que acarree un fracaso de la justicia. Tampoco se demostró que el foro recurrido se haya equivocado en la interpretación o aplicación de una norma procesal ni que, intervenir en esta etapa, evitaría un perjuicio sustancial contra la parte peticionaria, por lo que resolvemos denegar la expedición del auto de *certiorari*.

## IV

Por lo antes expuesto, en el ejercicio de nuestra discreción, se declara no ha lugar la *Solicitud Urgente en Auxilio de Jurisdicción* y denegamos la expedición del auto de *Certiorari*.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones